```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,      )    Criminal No.
                               )    04-10098-WGY
        v.                     )
                               )
CARMEN FIGUEROA,               )
                               )
        Defendant.             )
```

## UNITED STATES' SENTENCING MEMORANDUM RELATING TO DEFENDANT CARMEN FIGUEROA

The United States of America, by its attorney, Michael J. Sullivan, United States Attorney for the District of Massachusetts, respectfully submits this Sentencing Memorandum setting forth its position regarding the sentencing of defendant Carmen Figueroa ("Figueroa"). Sentencing is scheduled for June 12, 2006.

## I.  Introduction

On April 20, 2005, a Second Superseding Indictment was returned against Figueroa and her five co-defendants charging them with conspiracy to distribute, and to possess with intent to distribute, over 50 grams of cocaine base, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A)(iii).

On May 20, 2005, after a jury trial, Figueroa was convicted of the charge. During the trial, Figueroa testified and admitted that she partook in virtually all aspects of the drug trade - she arranged logistics, dealt with the supplier, obtained the crack, repackaged the crack, spoke with customers, and handled and spent the drug proceeds. However, at trial, she raised a defense of

duress, and claimed that she was involved only because she feared for her life due to co-defendant Manuel Mendes ("Mendes"). Yet, even assuming the veracity of her statement that she feared for her life, the evidence showed that Figueroa had numerous opportunities to "escape" from Mendes' hold - at a minimum, she could have refused to answer the phone, or, she could have taken her children, her car, sought help and begun a new life. Instead, Figueroa chose to do none of this, but rather lived off the largesse of the drug proceeds. She not only used the drug money for her and her children's day-to-day expenses but also used it to pay cash for elective surgery ($10,000), nursing school, expensive household items and pocketbooks (worth over $1,000 each).

Further, in February, 2004, she had the opportunity to talk to the police in confidence, when they arrived to investigate a break-in at her home. Rather than seek their assistance in getting help, she lied to them. She lied about the amount of cash stolen, she lied about how she got her expensive television in her home, and, most significantly, she lied about Mendes. The police asked her specifically whether she had any boyfriends, and she responded "no." She did not want the police to know about Mendes, and did not want the police to know he was in jail.

The jury rejected Figueroa's duress defense and found her guilty of conspiring to possess, and to possess with intent to

distribute, over 1.5 kilograms of crack cocaine.

## II.  The Presentence Report/Government's Position

### A.  Drug Weight

Probation determined that Figueroa is responsible for approximately 5.718 kilograms of crack cocaine, and therefore has a base offense level of 38.[1]  The government does not dispute the base offense level.

### B.  The Safety Valve

Probation concluded that Figueroa would be eligible for the safety valve if she satisfied the fifth criteria thereof.  After her conviction, Figueroa met with the government for a safety valve proffer.

During the safety valve proffer, Figueroa reiterated much of her trial testimony relating to the trips she made to New York to get the crack, how she broke it up, and generally how the conspiracy was run.  The government does not have any issues with this aspect of the proffer, but does have concerns with other aspects.  First, during the proffer, Figueroa attempted to lie, but then changed her story when questioned.  She admitted that one time when co-defendant Christopher Custer ("Custer") returned

---

[1] Probation's calculation on drug weight is extremely conservative, as the evidence showed that the organization obtained approximately 500 grams of crack from co-defendant William Tejeda every ten days to two weeks from January 2003, through March 16, 2004, for a total amount of approximately 14.5 kilograms (approximately 30 trips x 500 grams).

from New York, he brought back both crack cocaine and a small quantity of cocaine powder. At the proffer, she stated that Mendes wanted her (Figueroa) to sniff the powder cocaine. Figueroa stated that she refused to do so, but told Mendes that she had. Figueroa also told the government that instead of sniffing it, she flushed it down the toilet.

Figueroa later changed her story. She said that she did not in fact flush all of the cocaine down the toilet, but instead brought some of it to the owner or employee of a hair salon in Wareham, MA. Figueroa said she gave the cocaine to the owner/employee per Mendes' instruction. Figueroa admitted she did this on more than one occasion. Significantly, she also stated that she understood that the owner/employee's husband of the owner worked at the Plymouth House of Corrections in food services and that she met him one time while in the hair salon.

During the investigation, agents retrieved phone records on Figueroa's cellular telephone, which showed that from April 23, 2003 through August 9, 2003, Figueroa's cellular telephone had 32 contacts with a cellular telephone that was subscribed to a corrections officer who worked at the PHOC (all but three of the calls were incoming to Figueroa).

When asked about these phone contacts, Figueroa denied having any knowledge about speaking with, or even knowing about, a corrections officer. A call from May 6, 2003 was then played

for her, during which Mendes told Figueroa to bring a cocaine package to the PHOC and not to the hair salon. Figueroa asked Mendes to whom she should bring the package, and Mendes replied a "cop." After hearing the call, Figueroa stated she remembered it, and told the government that she never brought the package to the cop, because she complained to Mendes about doing so, so he told her to forget about it. She continued to deny having any knowledge about a corrections officer.

This portion of the proffer is troubling because Figueroa's complete denial of knowing about a corrections officer coupled with Mendes' reference to a hair salon and her initial lie about flushing the cocaine down the toilet suggests that Figueroa knows more than what she told the government.

Thus, the government suspects that Figueroa has been less than forthcoming regarding this aspect of the proffer. Nonetheless, because the government has only suspicions about this, it does not oppose her receiving the safety valve. Based on this, Figueroa's base offense level should be reduced by two levels, so that she is at a base offense level of 36. In addition, because of the safety valve, the government notes that Figueroa is no longer subject to the ten year mandatory minimum sentence provided for in 18 U.S.C. § 841(b)(1)(A)(iii).

5

C.  **Acceptance of Responsibility**

In an objection to the presentence report, Figueroa suggested that, even though she went to trial, she should nonetheless get a two point reduction for acceptance of responsibility because she admitted the drug conspiracy and only wanted to present her duress defense to the jury.  As such, she testified at length about her relationship with Mendes, both before and during the time period he was in prison.[2]

Section 3E1.1 of the Sentencing Guidelines allows a two or three point reduction in the adjusted offense level if a defendant promptly accepts responsibility for his or her criminal acts.  Note 2 to the Application Notes states:

> "In rare situations, a defendant may clearly
> demonstrate an acceptance of responsibility
> for his criminal conduct even though he
> exercises his constitutional right to a
> trial.  This may occur, for example, where a
> defendant goes to trial to assert and
> preserve issues that do not relate to factual

---

[2] The government suggests that much of Figueroa's testimony in this regard is belied by the evidence.  The recorded telephone calls played at trial showed that Figueroa and Mendes talked constantly about everything, but not in a way that suggested Mendes was terrorizing Figueroa.  None of Mendes' comments during the calls came remotely close to threatening Figueroa.  Further, at least one call directly contradicted Figueroa's testimony about Mendes' state of mind.  At trial, Figueroa testified on cross examination that when she told Mendes about the police coming to her apartment after a break-in, Mendes was upset, very mad, and raised his voice.  The recorded call of this moment shows just the opposite - Mendes did not raise his voice or get angry.  Instead, the two of them talked about what was stolen and tried to figure out which family member or friend could have done it.

>       guilt (e.g., to make a constitutional
>       challenge to a statute or a challenge to the
>       applicability of a statute to his conduct). .
>       . . ."

Figueroa's quest for acceptance of responsibility credit must be denied because of the First Circuit's decision in United States v. Gorsuch, 404 F.3d 543 (1st Cir. 2005). In Gorsuch, the district court concluded the defendant accepted responsibility, when the trial consisted primarily of expert witnesses related to the defendant's insanity defense (and where, presumably, the defendant admitted the underlying facts). The government appealed and the First Circuit reversed on this issue. In doing so, it adopted the government's argument that "binding circuit precedent preclude[d] a decrease [for acceptance of responsibility] where the defendant goes to trial to assert a recognized defense to criminal charges but fails to persuade the jury." Id. at 546.

That is the exactly the situation in the instant case. Here, Figueroa went to trial only to assert a recognized defense to the criminal charge. She failed to persuade the jury on the defense. Under the Gorsuch rule, she is not entitled to credit for acceptance of responsibility. See also, United States v. Bello, 194 F.3d 18, 20-22 (1st Cir. 1999)(defendant who did not contest *actus reas* but denied criminal responsibility because of self defense not entitled to acceptance of responsibility); United States v. Albizu, 107 F.3d 4 (2nd Cir. 1997)(defendant who

7

admitted importing heroin into the United States, but denied criminal responsibility due to a duress defense, was not entitled to acceptance of responsibility); United States v. Waloke, 962 F.2d 824 (8th Cir. 1992)(no acceptance of responsibility in assault case where defendant claimed self defense); United States v. Bishop, 369 F. Supp.2d 9 (D. Me. 2005)(defendant in felon in possession case who denied criminal responsibility due to a doctrine of necessity was not entitled to acceptance of responsibility).

**The Government's Recommendation**

With a base offense level of 38, less two levels for the safety valve proffer, and no credit for acceptance of responsibility, Figueroa has an adjusted offense level of 36. At Criminal History Category I, Figueroa is subject to a period of between 188 to 235 months' imprisonment, a fine of between $20,000 and $4,000,000, a period of supervised release of between 3 to 5 years and a $100 special assessment.

The government recommends that Figueroa be sentenced at the low end of these guidelines, so that she is sentenced to a period of incarceration of 188 months, no fine, due to her inability to

pay a fine, a period of supervised release of 3 years and a special assessment of $100.

                      MICHAEL J. SULLIVAN
                      United States Attorney

        By:   /s/ Susan M. Poswistilo
             SUSAN M. POSWISTILO
             Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

    I hereby certify on this 7th day of June 2006 that the United States' Sentencing Memorandum filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants.

                      /s Susan M. Poswistilo
                      Susan M. Poswistilo
                      Assistant United States Attorney