UNITED STATES OF AMERICA
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                          ) | CR. No.: 04-10098-WGY |
| ) | |
| CARMEN FIGUEROA,    ) | |
|     Defendant        ) | |

### DEFENDANT'S SENTENCING MEMORANDUM

**I.    Introduction**

Carmen Figueroa is a 27 year old mother of three who was found guilty after trial of Conspiracy to Possess with Intent to Distribute 50 grams or more of cocaine base. She had been released prior to trial and fulfilled all of her conditions of release but, was incarcerated upon the finding of guilty. She will have served 13 months and 22 days as of the date of her sentencing. Defendant is submitting this memorandum in order to assist the Court in evaluating all of the relevant data relative to Ms. Figueroa in order to formulate a fair sentence for her under 18 U.S.C. § 3553(a) and United States v. Booker, 543 U.S. 220 (2005).

**II.    Proposed Sentence**

Defendant submits that the following proposed sentence is fair, appropriate and should be imposed by the Court:

1.    60 months incarceration;

2.    4 years supervised release which the following special conditions:

    (a)    mental health counseling to address her problems from having been in an abusive relationship since the age of thirteen; and

    (b)    an order preventing her from having any contact with Manuel Mendes in person or by telephone.

### III. Reasons For Proposed Sentence

In determining a fair sentence the Court should first review the advisory guideline range.

#### A. Guideline Range Calculation

Probation has determined that the defendant is responsible for more then 1.5 kilograms of crack cocaine (5.718 kilograms) which has a base offense level of 38, U.S.S.G. § 2D1.1(c)(1). Probation finds no adjustment warranted for her role in the offense or acceptance of responsibility and sets out a total offense level of 38.

Defendant's Criminal History Category is I and has no criminal history points.

#### B. Safety Valve

Probation suggests that Ms. Figueroa meets the first four criteria for the safety valve adjustment and it is defendant's understanding that as a result of her testimony and a post conviction interview, the government will inform the Court that she has met criteria 5 as well. Accordingly, Ms. Figueroa should receive a two level reduction pursuant to U.S.S.G. § 5D1.2(b) which places her offense level at 36 with a Criminal History Category of I.

#### C. Acceptance of Responsibility

Defendant submits that she be awarded a two level reduction for acceptance of responsibility not with standing the fact that she put the government to trial. Application Note No.: 2 to U.S.S.G. § 3E1.1 indicates that conviction after trial does not automatically preclude a defendant from receiving a reduction for acceptance of responsibility. The note further indicates that there are rare exceptions when a defendant may demonstrate acceptance of responsibility for criminal conduct even though the defendant goes to trial to assert and preserve issues not related to the factual conduct of the defendant in committing the crime. Here, the defendant testified, acknowledged her criminal conduct and if fact, assisted in proving that her co-defendant was a member of the drug conspiracy and the supplier of the cocaine base by testifying to

that fact on cross-examination. Ms. Figueroa testified to each of the actions she had been accused of: traveling to New York to pick up drugs, storing drugs and money, and passing messages from Manuel Mendes to the others involved. She also testified to amounts and frequency of the cocaine base shipment. Her defense was duress/coercion. After hearing, her counsel decided that it was her hysterical fear or Manuel Mendes from the abuse she received from the time she was pregnant with her first child at 13 years old that caused her to commit the criminal acts and that her reaction to Manuel Mendes fit the criteria for someone with Battered Woman Syndrome. After interviewing witnesses, counsel was comfortable presenting a duress defense. While the decision to process to trial was ultimate, Ms. Figueroa's counsel concurred with that decision, perhaps erroneously. In any event, the defense of mental coercion does not conflict with her acknowledgment of what she has done and her admission that what she was doing was wrong but that her relationship with and her fear of Manuel Mendes, even while she was behind bars, caused her actions to assist him.

If, as we suggest, the Court awards a two level downward adjustment for acceptance of responsibility, Ms. Figueroa's offense level drops to a level 34.

D.    Role In The Offense

Defendant suggests that she should be awards a role adjustment of two levels pursuant to U.S.S.G. § 3B1.2 for being a minor participant. This tole adjustment should be awarded to her because although she played an integral role in the conspiracy she was, from the evidence presented, merely a conduit for information and acted only on Mr. Mendes' directions and orders. She did not do anything relating to the Mendes's drug business except what he instructed her to do. Moreover, she was not indispensable to the conspiracy as Mr. Mendes had other women available to step in and do his bidding. Ms. Figueroa therefore played a minor role and that fact should be reflected in her offense level. A two level reduction should be rewarded placing her offense level at 32.

E.  **Departure Pursuant To U.S.S.G. § 5K2.12**

U.S.S.G. § 5K2.12 specifically provides that if the defendant committed the offense because of serious coercion, black mail or duress, under the circumstances not amounting to a real defense, the Court may depart downward.

On the evidence heard at trial there can be no question that Ms. Figueroa had been coerced into this drug conspiracy by the father of her children, Manuel Mendes. As the evidence demonstrated his control over her began when she was 13 years old at the time she started "dating" him. He controlled her by asserting his male authority, restricting her freedom and watching her every move. Ms. Figueroa became one of his women (he was involved with several). He attempted to control where she could go, who she could see, and what she could do. He demeaned her and physically abused her to curb her will to his. The Court heard her testify to specific instances of his violent conduct toward her and observed her demeanor as she testified about them. Whether legally amounting to coercion or not it is clear that Ms. Figueroa's participation in the drug conspiracy was the result of Mr. Mendes' influence and control over her and her fear of him and his family members, as she described on the stand.

Although Mr. Mendes was incarcerated, he controlled the ongoing drug business by manipulating Ms. Figueroa and others into doing his bidding with constant telephone calls (the records show an average of 5-10 calls per day to Ms. Figueroa) and visits providing the ability for him to do so. The fear he needed to control came from previous acts and the reputation his family had in the area for violence.

Because Ms. Figueroa had been in this abusive relationship since she was 13 years old and was from a culture where men are considered to be superior to women, she had effectively been conditioned to do Mr. Mendes' bidding. She rebelled at times, but each time she was punished for her rebellion. She continued her relationship with him out of fear and her attraction to him. She did not fo to the police out of

fear, whether rational or not of the consequences she would face from his family.

Ms. Figueroa became a classic case of *The Domestic Violence Source Book*[1], *The Psychology of Domestic Violence*, pp. 54-55. Eventually she was psychologically trapped in the relationship and unable to see a way out. It is interesting to note that when she was arrested for this offense and forbidden, as part of her conditions of release to not have any contact with Mr. Mendes, she began recovering from his influence. She found employment, supported her three children, began establishing healthy relationships with other people and was able to comply fully with her conditions of release. All of this demonstrates her ability to function well in society.

Defendant submits that the Court should depart downward the amount necessary to reach the "reasonable sentence" suggested.

### III. Sentencing Factors

Once the Court has calculated the correct guideline range, it should then consider the sentencing factors listed in 18 U.S.C. § 3553(a) in arriving at a fair and appropriate sentence, a sentence that is sufficient but not greater than necessary to comply with the sentencing purposes set out in 18 U.S.C. § 3553(a)(2). The fundamental duty of the Court is to impose a fair sentence individualized to the defendant while avoiding sentencing disparities among similar situated defendants. *See*, 18 U.S.C. § 3553(a)(6).

Defendant submits that the 60 month sentence proposed by counsel is the appropriate sentence in this case as an analysis of the sentencing factors will show.

### A. The Nature And Circumstances Of The Offense

The Court heard over the course of the trial the evidence constituting the offense and defendant's role in it. Moreover, there is a full description of the offense in the pre-sentence report describing the offense. No additional description is required.

---

[1] Berry, The Domestic Violence Source Book, Lowell House (2002)

B.  **Seriousness of the Offense**

Although the offense is clearly a serious one and cocaine base is a serious societal problem, defendant submits that her role in the offense and the duress imposed on her to participate mitigates, to some degree, the offense. Moreover, the offense seriousness measured by the 100-1 powder cocaine to crack ratio for sentencing purposes overstates the seriousness of the offense and creates unwarranted sentencing disparity.

Courts and commentators have long criticized this disparity as lacking persuasive penological ore scientific justification and creating a racially disparate impact in federal sentencing. *See, e.g.*, United States v. Dumas, 64 F.3d 1427, 1432 (9th Cir. 1995), *cert. denied*, 517 U.S. 1114 (1996); (Boochever, J., concurring); United States v. Willis, 967 F.2d 1220, 1226 (8th Cir 1992) (Heaney, J., concurring); David A. Aklansky, Cocaine, Race and Equal Protection, 47 Stan. L. Rev. 1283 (1995); Matthew F. Leitman, A Proposed Standard of Equal Protection review for Classifications Within the Criminal Justice System that Have a Racially Disparate Impact: A Case Study of the Federal Sentencing Guidelines' Classification Between Crack and Powder Cocaine, 25 U. Tol. L. Rev. 215 (1994).

In 1997 the Sentencing Commission produced a lengthy report, U.S.S.G. Special Report to Congress: Cocaine and Federal Sentencing Policy (1997), which was the result of an in depth analysis of powder cocaine verses crack cocaine. This report recommended that the ration be reduced to 5:1. In 2002 the Commission recommended a 20:1 ration to which Congress has not responded. Post *Booker*, defendant suggests that the Court can consider the report as part of its seriousness of the offense analysis in determining a fair sentence and that United States v. Pho, 433 F.3d 53 (1st Cir 2006) does not prohibit the Court from doing so.

**C.    History And Characteristics Of Defendant**

Probation has done an admirable job in presenting the Court with defendant's history, Her attempt at schooling, the manner in which she raised her children, the relationship with them and her work ethic depict a person who will be an asset to the community when released. She has begun to put her abusive past behind her and looks forward to being reunited with her family as soon as possible.

**D.    General Deterrence**

For a sentence to have a deterrent effect on the public, the case must be one that catches the public's eye. Deterrence depends upon the communication of the sentence to the public and their perception of the sentences as something that would keep them from committing the crime. In this case, 60 months is not likely to produce any less deterrence than the guideline sentence in this case. If there is any general deterrent effect, it is the fact of jail for the offense NOT the quantity of jail time. In that respect, the sentence proposes by the defendant will provide some deterrence to others.

**E.    Specific Deterrence**

An important consideration in formulating a fair sentence is determined and what sentence is necessary to deter the defendant from further criminal conduct. Defendant submits that her incarceration at MCI Framingham including the behavior of the guards and of her fellow inmates made it clear that she does not want to be in prison ever again. Whatever deterrence a jail sentence brings to an individual has already deterred Ms. Figueroa from further criminal conduct.

**F.    Rehabilitation**

Given defendant's abilities, mental states, educational and work background, there is no need for substantial incarceration to effect rehabilitation. A sentence of incarceration will only make it more difficult for Ms. Figueroa to re-integrate herself into society and to obtain a job, commensurate with her skills and abilities. To the extent that Ms. Figueroa might require mental health counseling because of her abusive

past, if deemed necessary after a thorough evaluation, will provide this component as well as assist in specific deterrence.

### F. Kinds of Sentences Available

Because of the government's position that the safety valve is available, mandatory minimum sentences are not at issue. All sentencing options are therefore open to the Court.

### IV. Guideline Sentence Calculations

| | |
|---|---|
| Base Offense Level | 38 |
| Acceptance of Responsibility | -2 |
| Safety Valve | -2 |
| Role in Offense | -2 |
| | 32 |
| | |
| 2K2.12 Departure | -5 |
| | 27 |

Level 27 Category I = 70-87 months

### V. Fair Sentence

Defendant submits that considering the guidelines and other factors analyzed above, the fair and appropriate sentence is 60 months with 4 months supervised release. The other women who were participants in the conspiracy each received 36 months incarceration. Defendant recognizes that because she did not cooperate with the government as they the others did, her sentence must necessarily be more than they received. However, an additional 2 years seems fair and appropriate.

A sentence of five years is significant punishment for a woman with three young children she must leave behind. It serves all of the sentencing policies listed in 18 U.S.C. § 3553(a) and will be perceived as a significant sentence. The Court should accept and impose the sentence suggested.

        Respectfully submitted,
**CARMEN FIGUEROA**
By her Attorney;

Dated: July 7, 2006        /s/ John H. LaChance
        John H. LaChance, Esquire
        BBO# 282500
        600 Worcester Road
        Suite 501
        Framingham, MA 01702
        Tel:  (508) 879-5730
        Fax: (508) 879-2288

**CERTIFICATE OF SERVICE**

    I, John H. LaChance, Esq., do hereby certify that I have served a copy of the foregoing upon the government by electronically filing the same with the CM / ECF system to Assistant United States Attorney Susan Postswillo located at the Office of the United States Attorney's Office, United States District Courthouse, One Courthouse Way, Suite 9200, Boston, MA 02210 on this 7th day of July, 2006.


        /s/ John H. LaChance
        John H. LaChance, Esquire